1
2
3
4
5
6
7
8
9
10          **IN THE UNITED STATES DISTRICT COURT**
11         **FOR THE EASTERN DISTRICT OF CALIFORNIA**
12
13
ERNIE ALTMAN, et al.,                    CASE NO. CV F 11-1807 LJO MJS
14
                    Plaintiffs,          **ORDER ON DEFENDANTS' F.R.Civ.P. 12**
15                                        **MOTIONS**
        vs.                              (Docs. 10, 11, 12.)
16
PNC MORTGAGE, et al.,
17
                    Defendants.
18
_____/
19
20                        __INTRODUCTION__

21          Defendants PNC Bank, N.A. ("PNC"), and Rushmore Loan Management Services ("Rushmore")

22  seek to dismiss as legally barred plaintiff Ernie Altmann ("Mr. Altmann") and Creative Builders, Inc.'s

23  ("CBI's") common law, statutory, punitive damages and attorney fees claims arising out of Mr.

24  Altmann's loan for and foreclosure activity on his Stanislaus County residence ("property"). Mr. Altman

25  and CBI (collectively "plaintiffs") fail to oppose dismissal of their claims. This Court considered PNC

26  and Rushmore's (collectively "defendants'") F.R.Civ.P. 12(b)(6) motion to dismiss and F.R.Civ.P. 12(f)

27  motion to strike on the record and VACATES the February 1, 2012 hearing, pursuant to Local Rule

28  230(c), (g). For the reasons discussed below, this Court DISMISSES this action against defendants.

1

# BACKGROUND[1]

## Summary

According to the complaint, plaintiffs pursue claims to address "Defendant's negligent, fraudulent and unlawful conduct concerning residential mortgage loan transaction with the Plaintiff." CBI "is on title" as the property owner "in exchange for loans and expenses paid by CBI on behalf of Altmann." PNC is named as a defendant as a successor in interest to defendant National City Mortgage Company ("National City"), the "original lender" of Mr. Altmann's "mortgage loan." Rushmore services Mr. Altmann's loan and "has demanded payments." The complaint alleges 15 claims arising under common law and federal and California statutes as well as seeking punitive damages and attorney fees. Defendants challenge the complaint's claims as insufficiently pled and barred by limitations periods and other applicable law.

## Loan Origination And Funding

In early 2007, National City "solicited" Mr. Altmann to finance the property with a construction loan so Mr. Altmann "could build his residential home" on the property. National City stated that the construction loan "was to later convert to a 30-year term with a fixed interest rate known as a 'take out loan.'" Mr. Altmann "was not given a copy of any of the loan documents prior to closing as required."

National City never funded the entire construction loan and never converted the loan to a "take out loan." National City fell short by $40,000 to fund the construction loan and funded construction loan draws late and "less than the amount it was supposed to fund" to require Mr. Altmann to complete construction with funds borrowed from CBI.

National City failed to carry construction insurance on the loan. A $50,000 claim arose during construction, and National City stated it would cover the loss and reimburse Mr. Altmann but failed to do so to require Mr. Altmann to again borrow from CBI.

National City offered Mr. Altmann a short-term loan to cover his expenses while National City prepared to convert the loan. Mr. Altmann made timely payments on the short-term loan, but National City returned payments to Mr. Altmann without explanation and caused a default on the loan.

---

[1]     The factual recitation is derived generally from plaintiffs' Complaint for Damages ("complaint"), the target of defendants' challenges.

### Short Sale Of Property

National City offered Mr. Altmann a $595,000 short sale of the property and to waive its second loan on the property. A third-party buyer offered $595,000 for the property, and Mr. Altmann accepted. National City processed the short sale extremely slowly, and the buyer informed Mr. Altmann that he might cancel the sale due to delays.

When the short sale was set to close in September 2010, National City employee Lynn Rowland ("Mr. Rowland") requested a new property appraisal. The new property appraisal was $635,000, lower than the original $700,000 property appraisal. Mr. Rowland agreed to allow the buyer to reduce the sales price to $510,000 "because PNC accepted up to 85% of the appraised price."

At the end of September 2010, Mr. Rowland was unavailable to prevent timely closing of the short sale. On September 27, 2010, the short sale transaction was stayed due to a bankruptcy on an adjacent property and a bankruptcy debtor's easement which affected Mr. Altmann's property.

On October 1, 2010, Rushmore purchased Mr. Altmann's loan from PNC, despite the bankruptcy stay and such loan purchase "violated the bankruptcy stay and is therefore void."

In October 2010, Mr. Rowland assured Mr. Altmann that Mr. Rowland would handle the short sale for Rushmore, which would accept the $510,000 sale price. Mr. Rowland stated that if Rushmore did not approve the sale price, PNC would repurchase the loan to allow short sale completion.

Two weeks later, Mr. Rowland informed Mr. Altmann that PNC had "changed its mind" and would not repurchase the loan from Rushmore. In November 2010, Rushmore employee Steve Sanchez took over the short sale from Mr. Rowland and ordered a third property appraisal, which came back at $590,000. Rushmore refused to honor the pre-existing short sale approval and demanded an increased price of $590,000 from $510,000 to cause the buyer to cancel the short sale.

Mr. Altmann submitted a loan modification application to Rushmore, which intends to sell the property at a foreclosure trustee sale despite the absence of notice to CBI of the trustee sale to violate due process rights.

### Plaintiffs' Claims

Plaintiffs filed their complaint on October 27, 2011 to allege 15 claims which will be addressed below and seeks to recover general, special and punitive damages and attorney fees.

# DISCUSSION

## F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Defendants seek to dismiss the complaint's common law and statutory claims as legally barred and insufficiently pled.  Defendants further seek to strike the complaint's punitive damages prayer and references to subject defendants to punitive damages as well as attorney fees claims.[2]

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*,

---

[2]    Defendants seek F.R.Civ.P. 12(f) relief as to the complaint's punitive damages and attorney fees claims. However, defendants' motion in entirety will be analyzed under F.R.Civ.P. 12(b)(6) standards given *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 971 (9th Cir. 2010) ("We therefore hold that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law.") As such, this Court will address defendants' challenges and plaintiffs' claims under F.R.Civ.P. 12(b)(6) standards.

459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

1
2
3
4

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

5    *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

6    A plaintiff suing multiple defendants "must allege the basis of his claim against each defendant

7    to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim

8    to put defendants on sufficient notice of the allegations against them." *Gauvin v. Trombatore*, 682

9    F.Supp. 1067, 1071 (N.D. Cal. 1988). "Specific identification of the parties to the activities alleged by

10   the plaintiffs is required in this action to enable the defendant to plead intelligently." *Van Dyke Ford,*

11   *Inc. v. Ford Motor Co.,* 399 F.Supp. 277, 284 (D. Wis. 1975).

12   Moreover, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate

13   the existence of an affirmative defense." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069

14   (11th Cir. 1984). For instance, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to

15   dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision*

16   *Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).

17   A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running

18   is apparent on the complaint's face. *Jablon*, 614 F.2d at 682. If the limitations defense does not appear

19   on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may

20   be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and*

21   *Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

22   With these standards in mind, this Court turns to defendants' challenges to the complaint's

23   claims.

24                                    **Fraud**

25   The complaint's (first) fraud and deceit – misrepresentation and promise with no intention to

26   perform claim alleges that "defendants did not accurately maintain records of construction payouts and

27   have charged for monies not received by Plaintiff, and did not fully fund the construction loan or convert

28   it to a take-out loan." The claim further alleges that "Defendants" misrepresented material facts and that

6

1   National City made a promise with intention to induce Mr. Altmann to execute the promissory note.

2          The complaint's (tenth) constructive fraud claim alleges that "Defendants" deceived Mr. Altmann

3   into a mortgage transaction, have committed constructive fraud, extended credit to Mr. Altmann without

4   regard to his ability to pay, and failed to maintain records of loan payouts.

5          The complaint's (fifteen) cause of action alleges that National City "made misrepresentations and

6   false promises . . . to entice Altmann to execute the construction loan documents and become indebted

7   to Defendant."

8                                    ***Limitations Defense***

9          Defendants contend that the complaint's fraud claims as to loan origination are barred by the

10  three-year limitations period of California Code of Civil Procedure section 338(d) for an "action for

11  relief on the ground of fraud."  Defendants point to the loan's April 2007 origination to require related

12  fraud claims to be filed no later than April 2010, 18 months prior to the complaint's October 27, 2011

13  filing.  Defendants further point to the absence of facts to support tolling the three-year limitations.

14         Defendants raise a valid limitations defense.  Fraud-based claims arising from loan origination

15  are time-barred.

16                                      ***Fraud Elements***

17         Defendants further attack the fraud claims as lacking sufficient particularity to satisfy F.R.Civ.P.

18  9(b).

19         The elements of a California fraud claim are: (1) misrepresentation (false representation,

20  concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e.,

21  to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th

22  631, 638, 49 Cal.Rptr.2d 377 (1996).  The same elements comprise a cause of action for negligent

23  misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois,*

24  *Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rptr.3d 1 (2004).

25         "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and

26  specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133,

27  156, 53 Cal.Rptr.2d 336 (1996).  There must be a showing "that the defendant thereby intended to induce

28  the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff

1   actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment."

2   *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.  "The absence of any one of these required elements

3   will preclude recovery."  *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231

4   Cal.Rptr. 355 (1986).

5                                          ***Particularity Pleading Standard***

6          F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[3]

7   In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s

8   particularity requirements."  *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D.

9   Cal. 2003).  A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P.

10   9(b)'s heightened pleading requirements.  *Vess*, 317 F.3d at 1107.[4]   A motion to dismiss a claim

11   "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional

12   equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim.  *Vess*, 317 F.3d at

13   1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of

14   the claim showing that the pleader is entitled to relief."

15          F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's

16   requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of

17   unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P 9(b) requires

18   "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged

19   to constitute the fraud charged so that they can defend against the charge and not just deny that they have

20   done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient

21   under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an

22   adequate answer from the allegations."  *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993)

23   _____

24        [3]     F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court
      will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the

25   Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess*
      *v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.

26   1995)(italics in original)).

27        [4]     "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that
      course of conduct as the basis of a claim.  In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and

28   the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

1   (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th

2   Cir. 1997)).  The Ninth Circuit has explained:

3         Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud.  The
          time, place and content of an alleged misrepresentation may identify the statement or the

4         omission complained of, but these circumstances do not "constitute" fraud.  The
          statement in question must be false to be fraudulent.  Accordingly, our cases have

5         consistently required that circumstances indicating falseness be set forth. . . . [W]e [have]
          observed that plaintiff must include statements regarding the time, place, and *nature* of

6         the alleged fraudulent activities, and that "mere conclusory allegations of fraud are
          insufficient." . . .  The plaintiff must set forth what is false or misleading about a

7         statement, and why it is false.  In other words, the plaintiff must set forth an explanation
          as to why the statement or omission complained of was false or misleading. . . .

8
          In certain cases, to be sure, the requisite particularity might be supplied with great

9         simplicity.

10  *In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in

11  original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal*

12  *Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

13  1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the

14  misconduct charged); *see Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times,

15  dates, places, benefits received and other details of the alleged fraudulent activity.")

16        In a fraud action against a corporation, a plaintiff must "allege the names of the persons who

17  made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they

18  said or wrote, and when it was said or written."  *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2

19  Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

20        F.R.Civ.P. 9(b) "does not allow a complaint to merely lump multiple defendants together but

21  'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform

22  each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz*

23  *v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co*.,

24  995 F.Supp. 1437, 1439 (M.D. Fla.1998)). In the context of a fraud suit involving multiple defendants,

25  a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent

26  scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989).  "To state a claim

27  of fraudulent conduct, which carries substantial reputational costs, plaintiffs must provide each and every

28  defendant with enough information to enable them 'to know what misrepresentations are attributable

9

to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Cal. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1433 (N.D. Cal.1988)).

Defendants point to the complaint's absence of facts of defendants' alleged representations or omissions made to Mr. Altmann. Defendants note the limited allegations of failure to maintain records and to fund fully the loan and unspecified representations during loan origination.

The complaint's conclusory allegations fail to meet Rule 9(b)'s strict standard. The complaint lacks precise allegations as to what defendants, through specifically identified and authorized agents or representatives, allegedly promised or represented. The complaint lacks facts to support fraud elements let alone the who, what, when, when and how of alleged misconduct. Defendants correctly challenge the complaint's failure "to satisfy elements, much less the heightened federal pleading standard." The complaint relies on mere notions of misrepresentations and omissions as to Mr. Altmann's loan matters without providing supporting facts or necessary details. Given the multiple defendants and their differing roles, such allegations are insufficient to warrant dismissal of the complaint's claims sounding in fraud.

Moreover, fraud claims addressing alleged failure to fund fully the loan sound in breach of contract rather than fraud. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2nd Cir. 1993) (failure to carry out a promise "does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform"). Purported contract breaches fail to support fraud claims.

### Rosenthal Fair Debt Collection Practices Act

The complaint's second claim seeks relief under the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code, §§ 1788, et seq. The claim alleges RFDCPA violations in that "Defendants . . . threatened to take actions not permitted by law," including "collection on a debt not owed to Defendants, making false reports to credit reporting agencies, foreclosing upon a void security interest, foreclosing upon a Note of which they were not in procession [sic] nor otherwise entitled to payment, falsely stating the amount of a debt, increasing the amount of a debt by including amounts that are not permitted by law or contract, and using unfair and unconscionable means in an attempt to collect

1  a debt."

2        The RFDCPA's purpose is "to prohibit debt collectors from engaging in unfair or deceptive

3  practices in the collection of consumer debts and to require debtors to act fairly in entering into and

4  honoring such debts."  Cal. Civ. Code, § 1788.1(b).  The RFDCPA defines "debt collector" as "any

5  person who, in the ordinary course of business, regularly, on behalf of himself or herself or others,

6  engages in debt collection."  Cal. Civ. Code, § 1788.2(c).  "[F]oreclosure does not constitute debt

7  collection under the RFDCPA."  *Izenberg v. ETS Services, LLC*, 589 F.Supp.2d 1193, 1199 (C.D. Cal.

8  2008).  The "law is clear that foreclosing on a property pursuant to a deed of trust is not a debt collection

9  within the meaning of the RFDCPA or the FDCA [Fair Debt Collection Practices Act, 15 U.S.C. §§

10  1692, et seq.]."  *Gamboa v. Trustee Corps*, 2009 WL 656285, * 4 (N.D. Cal. 2009).  As this Court has

11  explained previously, "[l]ogic suggests that non-judicial foreclosure is not a debt collector's act under

12  California Civil Code section 1788.2(c)."  *Swanson v. ECM Mortgage Corp.*, 2009 WL 3627925 (E.D.

13  Cal. 2009).

14        Defendants fault the complaint's lack of facts to characterize defendants as debtor collectors

15  under the RFDCPA.  Defendants note that the complaint exempts them from the RFDCPA in that the

16  complaint identifies defendants as a lender and loan servicer.  Defendants further argue that the

17  RFDCPA claim is barred by the one-year limitations period of California Civil Code section 1788.30(f)

18  (civil action must be brought "within one year from the date of the occurrence of the violation").

19        Defendants are correct that the complaint fails to substantiate defendants as debt collectors to

20  subject them to an RFDCPA claim.  The complaint references only loan origination, an attempted short

21  sale, and potential non-judicial foreclosure, none of which is debt collector activity under the RFDCPA.

22  Morever, purported debt collection occurred more than a year prior to the October 27, 2011 filing of the

23  complaint.  The RFDCPA claims fail and are subject to dismissal.

24  <u>**Negligence**</u>

25        The complaint's (third) negligence claim alleges that "Defendants breached their duty of care to

26  Plaintiff when they failed to maintain the original Mortgage Notes[,] failed to properly create original

27  documents, . . . failed to make the required disclosures . . ., took payments to which they were not

28  entitled, charged fees they were not entitled to charge and made otherwise authorized negative reporting

1  to Plaintiff's creditworthiness."  The claim further accuses National City of directing Mr. Altmann into

2  loans for which he was not qualified.

3  *Limitations Defense*

4  Defendants argue that claims relating to "purported misconduct during origination of the loan"

5  are barred by the two-year limitations period of California Code of Civil Procedure section 339(1) (two-

6  year limitations period for an action upon an obligation or liability not founded upon an instrument of

7  writing).  Defendants contend that negligence allegations sounding in fraud are barred by the three-year

8  limitations period of California Code of Civil Procedure section 338(d).  Defendants point to the April

9  2007 origination of Mr. Altmann's loan to set an April 2010 deadline to pursue negligence/fraud

10  sounding claims to render such claims untimely with the October 27, 2011 complaint filing.

11  Defendants raise valid points.  Negligence claims arising more than two years prior to the

12  complaint's October 27, 2011 filing are barred, especially given the lack of facts to support tolling.

13  *Duty Of Care*

14  Defendants further challenge the absence of their duty of care to support a negligence claim.

15  "The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2)

16  breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury."

17  *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation

18  omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to

19  establishing a claim for negligence."  *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d

20  1089, 1095, 283 Cal.Rptr. 53 (1991).  "[A]bsent a duty, the defendant's care, or lack of care, is

21  irrelevant." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 481, 56

22  Cal.Rptr.2d 756 (1996).  "The existence of a legal duty to use reasonable care in a particular factual

23  situation is a question of law for the court to decide."  *Vasquez v. Residential Investments, Inc.,* 118

24  Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

25  "The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care

26  in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the

27  person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is

28  actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm."

1  *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516

2  (1997).

3      There is no actionable duty between a lender and borrower in that loan transactions are arms-

4  length.  A lender "owes no duty of care to the [borrowers] in approving their loan.  Liability to a

5  borrower for negligence arises only when the lender 'actively participates' in the financed enterprise

6  'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161

7  Cal.Rptr. 516 (1980) (citing several cases).  "[A]s a general rule, a financial institution owes no duty of

8  care to a borrower when the institution's involvement in the loan transaction does not exceed the scope

9  of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr.

10  53; *see Myers v. Guarantee Sav. & Loan Assn.*, 79 Cal.App.3d 307, 312, 144 Cal. Rptr. 616 (1978) (no

11  lender liability when lender did not engage "in any activity outside the scope of the normal activities of

12  a lender of construction monies").

13      "Public policy does not impose upon the Bank absolute liability for the hardships which may

14  befall the [borrower] it finances." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516.  The success of

15  a borrower's investment "is not a benefit of the loan agreement which the Bank is under a duty to

16  protect." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516 (lender lacked duty to disclose "any

17  information it may have had").  "It is simply not tortious for a commercial lender to lend money, take

18  collateral, or to foreclose on collateral when a debt is not paid." *Sierra-Bay Fed. Land Bank Assn. v.*

19  *Superior Court*, 227 Cal.App.3d 318, 334, 277 Cal.Rptr. 753 (1991).

20      The complaint insufficiently attempts to allege defendants' cognizable a duty of care let alone

21  its breach.  Plaintiffs lack a negligence claim based on a lender/borrower relationship, particularly in the

22  absence of a duty to forego foreclosure or to provide loan modification, refinancing or similar relief.

23  "No such duty exists" for a lender "to determine the borrower's ability to repay the loan. . . . The lender's

24  efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's

25  protection, not the borrower's." *Renteria v. United States*, 452 F.Supp.2d 910, 922-923 (D. Ariz. 2006)

26  (borrowers "had to rely on their own judgment and risk assessment to determine whether or not to accept

27  the loan").  "A commercial lender is not to be regarded as the guarantor of a borrower's success and is

28  not liable for the hardships which may befall a borrower." *Sierra-Bay Fed. Land Bank Assn. v. Superior*

13

1 | *Court*, 227 Cal.App.3d 318, 334, 277 Cal.Rptr. 753 (1991). Moreover, defendants had "no interest in

2 | the loan" in their role as loan servicers. *See Cleveland v. Deutsche Bank Nat. Trust Co.*, 2009 WL

3 | 250017, at *3 (S.D. Cal. 2009).

4 | Defendants owed no duty of care to plaintiffs arising from Mr. Altmann's default, property

5 | foreclosure, and attempts to avoid foreclosure. The complaint lacks facts of special circumstances to

6 | impose duties on defendants in that the complaint depicts an arms-length transaction, nothing more. The

7 | complaint fails to substantiate a special lending relationship or an actionable breach of duty to

8 | substantiate a negligence claim. The negligence claim fails.

9 | **Real Estate Settlement Procedures Act**

10 | The complaint's fourth claim alleges that "Defendants" violated the Real Estate Settlement

11 | Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq., "at the time of closing on the sale of the

12 | Property by failing to correctly and accurately comply with the disclosure requirements therein and

13 | respond timely to Plaintiff's Qualified Written Request."

14 | Defendants fault the complaint's failure to allege a particular RESPA statute which was violated

15 | and facts to demonstrate RESPA applicability.

16 | Under RESPA, a QWR is a "written request from the borrower (or an agent of the borrower) for

17 | information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). Among other things,

18 | a QWR must include a "statement of the reasons for the belief of the borrower, to the extent applicable,

19 | that the account is in error or provides sufficient detail to the servicer regarding other information sought

20 | by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii).

21 | Defendants point to the absence of allegations to support that plaintiffs sent a legitimate QWR

22 | and to identify grounds that Mr. Altmann's loan or account was defective or in error. Defendants are

23 | correct. The complaint merely alleges that a QWR was mailed at various times and that "Defendants

24 | have yet to properly respond." The complaint fails to plead or identify a viable or legitimate QWR.

25 | Defendants further point to 12 U.S.C. § 2614's one-year limitations for violations of 12 U.S.C.

26 | / / /

27 | / / /

28 | / / /

14

§ 2607.[5]   "The statute of limitations for private plaintiffs suing under RESPA is one year from the 'date of the occurrence of the violation.'" *Edwards v. First American Corp.*, 517 F.Supp.2d 1199, 1204 (C.D. Cal. 2007) (quoting 12 U.S.C. § 2614).   The "primary ill" which RESPA seeks to remedy is "the potential for 'unnecessarily high settlement charges' caused by kickbacks, fee-splitting, and other practices that suppress price competition for settlement services.   This ill occurs, if at all, when the plaintiff pays for the service, typically at the closing." *Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359-360 (5th Cir. 2003) (quoting 12 U.S.C. §2601(a)).   Mr. Altmann closed his loan in April 2007, well more than a year prior to the complaint's October 27, 2011 filing to bar RESPA claims in connection with loan origination.

Defendants further note the absence of a private right of action under RESPA for disclosure violations.

RESPA's purpose is to "curb abusive settlement practices in the real estate industry.   Such amorphous goals, however, do not translate into a legislative intent to create a private right of action." *Bloom v. Martin*, 865 F.Supp. 1377, 1385 (N.D. Cal. 1994), *aff'd*, 77 F.3d 318 (1996).   "The structure of RESPA's various statutory provisions indicates that Congress did not intend to create a private right of action for disclosure violations under 12 U.S.C. § 2603 . . . Congress did not intend to provide a private remedy . . ." *Bloom*, 865 F.Supp. at 1384.

The absence of a private right of action dooms a purported RESPA claim based on disclosure violations.

The RESPA claim fails as a matter of law.

### **Breach Of Fiduciary Duty**

The complaint's (fifth) breach of fiduciary duty claim alleges: "Defendants did not accurately maintain records of constructions payouts and have charged for monies not received by Plaintiff, and did not fully fund the construction loan or convert it to a take-out loan."   The claim further alleges that "Defendants . . . have made several representations to Plaintiff with regard to material acts" and which were false.

---

[5]   12 U.S.C. § 2607(a) prohibits referral payments for real estate settlement services, and 12 U.S.C. § 2607(b) prohibits receipt of "any portion, split or percentage" of a settlement service fee, except for performed services.

"[T]o plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. The absence of any one of these elements is fatal to the cause of action." *Pierce v. Lyman*, 1 Cal.App.4th 1093, 1101, 3 Cal.Rptr.2d 236 (1991).

A fiduciary relationship arises "between parties to a transaction wherein one of the parties is . . . duty bound to act with the utmost good faith for the benefit of the other party." *Herbert v. Lankershim*, 9 Cal.2d 409, 483, 71 P.2d 220 (1937). A fiduciary relationship "ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent." *Herbert*, 9 Cal.2d at 483, 71 P.2d 220.

Nonetheless "no fiduciary relationship is established merely because 'the parties reposed trust and confidence in each other.'" *Girard v. Delta Towers Joint Venture*, 20 Cal.App.4th 1741, 1749, 26 Cal.Rptr.2d 102 (1993) (quoting *Worldvision Enterprises, Inc. v. American Broadcasting Companies, Inc.,* 142 Cal.App.3d 589, 595, 191 Cal.Rptr. 148 (1983)). To be charged with a fiduciary obligation, a person must knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law. *City of Hope Nat. Medical Center v. Genentech, Inc.*, 43 Cal.4th 375, 385, 181 P.3d 142 (2008).

"California courts have not extended the 'special relationship' doctrine to include ordinary commercial contractual relationships" *Martin v. U-Haul Co. Of Fresno,* 204 Cal.App.3d 396, 412, 251 Cal.Rptr. 17 (1988) (citations omitted). "The relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark*, 231 Cal.App.3d at 1093, n. 1, 283 Cal.Rptr. 53 (citing *Price v. Wells Fargo Bank,* 213 Cal.App.3d 465, 476-478, 261 Cal.Rptr. 735 (1989)). A commercial lender is entitled to pursue its own economic interests in a loan transaction. *Nymark*, 231 Cal.App.3d at 1093, n. 1, 283 Cal.Rptr. 53(citing *Kruse v. Bank of America,* 202 Cal.App.3d 38, 67, 248 Cal.Rptr. 217 (1988)).

Absent "special circumstances" a loan transaction is "at arms-length and there is no fiduciary relationship between the borrower and lender." *Oaks Management Corp. v. Superior Court*, 145

Cal.App.4th 453, 466, 51 Cal.Rptr.3d 561 (2006) ("the bank is in no sense a true fiduciary"); *see Downey v. Humphreys,* 102 Cal.App.2d 323, 332, 227 Cal.Rptr. 484 (1951) ("A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such."). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53.

The complaint alleges no facts to support a fiduciary relationship. The complaint offers the conclusory allegation that "Defendants . . . owed a fiduciary duty to the Plaintiff to act primarily for his benefit, to act with proper skill and diligence and not to make a personal profit from the agency at the expense of the principal, the Plaintiff." The complaint's mere reference to "fiduciary duties" is insufficient to impose a fiduciary relationship on defendants. The breach of fiduciary duty claim fails in the absence of supporting facts.

### Unfair Competition Law

The complaint's (sixth) claim purports to allege violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200, et seq. The claim alleges that "Defendants'" acts "constitute unlawful, unfair, and/or fraudulent business practices" as defined by the UCL.

Defendants challenge the complaint's failure to allege that plaintiffs suffered an injury cognizable under the UCL.

California Business and Professions Code section 17204 limits standing to bring a UCL claim to specified public officials and a private person "who has suffered injury in fact and has lost money or property as a result of the unfair competition." "This provision requires [plaintiff] to show that she has lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution, *see Birdsong v. Apple, Inc.*, 590 F.3d 955, 959–60 (9th Cir.2009), and also requires a 'causal connection' between [defendant's] alleged UCL violation and her injury in fact, *Hall v. Time Inc.*, 158 Cal.App.4th 847, 70 Cal.Rptr.3d 466, 471–72 (2008)." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-1205 (9th Cir. 2010).

Business and Professions Code section 17203 addresses UCL relief and provides in pertinent part:

1

2           Any person who engages, has engaged, or proposes to engage in unfair
      competition may be enjoined in any court of competent jurisdiction. The court may make
      such orders or judgments . . . as may be necessary to restore to any person in interest any
3     **money or property**, real or personal, which may have been acquired by means of such
      unfair competition.  (Bold added.)

4     "In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's

5     remedies are 'generally limited to injunctive relief and restitution.'"  *Kasky v. Nike, Inc.*, 27 Cal.4th 939,

6     950, 119 Cal.Rptr.2d 296 (2002) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular*

7     *Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)).

8           Defendants correctly note the complaint's absence of facts of plaintiffs' money or property

9     allegedly lost due to a UCL violation or "as a result of unfair competition."  The complaint lacks facts

10    to support plaintiffs' standing to seek UCL relief to warrant dismissal of the UCL claim.

11          Defendants further fault the complaint's lack of facts to substantiate that defendants committed

12    a UCL violation.

13          "Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and

14    unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr.

15    718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200).  The UCL establishes three varieties of unfair

16    competition – "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group,*

17    *Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000).  An "unlawful business activity" includes

18    anything that can properly be called a business practice and that at the same time is forbidden by law.

19    *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale,* 25 Cal.3d 626, 631-632, 159

20    Cal.Rptr. 811, 602 P.2d 731 (1979)).  "A business practice is 'unlawful' if it is 'forbidden by law.'"

21    *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169, 121 Cal.Rptr.2d 79 (2002)

22    (quoting *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992)).

23          The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state,

24    or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832,

25    838, 33 Cal.Rptr.2d 548 (1999).  The UCL "thus creates an independent action when a business practice

26    violates some other law." *Walker*, 98 Cal.App.4th at 1169, 121 Cal.Rptr.2d 79.  According to the

27    California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful

28    practices independently actionable under the UCL. *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th

377, 383, 6 Cal.Rptr.2d 487 (1992).

A fellow district court has explained the borrowing of a violation of law other than the UCL:

> To state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citation omitted). Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

*Rubio v. Capital One Bank*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008).

"Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech Communications*, 20 Cal.4th 163 at187, 83 Cal.Rptr.2d 548. The "unfairness" prong of the UCL "does not give the courts a general license to review the fairness of contracts." *Samura v. Kaiser Found. Health Plan*, 17 Cal.App.4th 1284, 1299 & n. 6, 22 Cal.Rptr.2d 20 (1993).

The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.,* 178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be deceived," *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673, at *5 (N.D. Cal. 2005).

"A plaintiff alleging unfair business practices under these statutes [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

The complaint fails to establish that defendants engaged in unlawful, unfair or fraudulent business practices under the UCL. In the absence of violation of a borrowed law, a UCL claim fails in that it cannot rest on purported deficiencies in the loan transaction, foreclosure proceedings or related matters. The complaint lacks viable statutory or common law claims and lacks reasonable particularity of facts to support a UCL claim. Reliance on other invalid claims alleged in the complaint fails to

support a viable UCL claim.  Furthermore, the complaint lacks particularity of fraudulent circumstances, such as a misrepresentation, for a UCL claim, especially given failure of fraud-sounding claims, as discussed above.  The complaint lacks facts to describe how consumers were deceived and to hint at a wrong subject to the UCL to warrant the UCL claim's  dismissal.

### Breach Of Contract

The complaint's (seventh) breach of contract claim alleges that "Defendants breached their agreement with Plaintiff":

1.    "[T]o exercise reasonable efforts and due diligence as promised thus failing to provide Plaintiff with an affordable loan and withholding construction draws and not fully funding the construction loan or paying draws timely"; and

2.    "[B]y committing wrongful acts including . . . failing to convert the loan and obtain payment and interest rates as promised in the 'take out loan", failing to provide loan documents."

The claim alleges that "Defendants" breached their duties by failing "to short sale the property at the price of $510,000, and later failed to repurchase the loan from Rushmore in order to complete the short sale transaction."  The claim further alleges that Rushmore, a loan successor, is bound by PNC's agreement to approve the $510,000 short sale.

"The standard elements of a claim for breach of contract are: '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.'"    *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal.App.4th 1171, 1178, 80 Cal.Rptr.3d 6 (2008).   "To form a contract, an 'offer must be sufficiently definite . . . that the performance promised is reasonably certain.'"    *Alexander v. Codemasters Group Limited*, 104 Cal.App.4th 129, 141. 127 Cal.Rptr.2d 145 (2002).

"As to the contract, where a written instrument is the foundation of a cause of action, it may be pleaded in haec verba by attaching a copy as an exhibit and incorporating it by proper reference."  *Byrne v. Harvey,* 211 Cal.App.2d 92, 103, 27 Cal.Rptr. 110 (1962); *Holly Sugar Corp. v. Johnson,* 18 Cal.2d 218, 225, 115 P.2d 8 (1941).  "Where a party relies in his complaint upon a contract in writing, and it affirmatively appears that all the terms of the contract are not set forth in hæc verba, nor stated in their

legal effect, but that a portion which may be material has been omitted, the complaint is insufficient." *Gilmore v. Lycoming Fire Ins. Co.*, 55 Cal. 123, 124 (1880).

Defendants fault the complaint's failure to allege a contract among the parties. Defendants point to the absence of CBI's agreement with either defendant or an agreement between Mr. Altmann and Rushmore. Defendants further fault the absence of alleged "specific terms of the purported contracts, or otherwise attach the contracts to the Complaint." As to the short sale, defendant note the complaint's failure to identify plaintiffs' consideration and terms breached by defendants. Defendants explain that an agreement to short sale required a writing to comply with the statute of frauds.

"In the absence of consideration, a gratuitous oral promise to postpone a sale of property pursuant to the terms of a trust deed ordinarily would be unenforceable under section 1698 [the statute of frauds]." *Raedeke v. Gibraltar Sav. & Loan Assn.,* 10 Cal.3d 665, 673, 111 Cal.Rptr. 693, 517 P.2d 1157 (1974) (citing *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 121, 92 Cal.Rptr. 851 (1971)); *see Nguyen v. Calhoun*, 105 Cal.App.4th 428, 445, 129 Cal.Rptr.2d 436 (2003) ("In this case, then, we conclude that the foreclosure sale may not be set aside based on the lender's alleged breach of an oral agreement to postpone the trustee's sale.")

"A contract in writing may not be altered by an executory oral agreement. (Civil Code, section 1698.) An agreement to postpone a valid sale of property beyond the date when said property may be sold under and according to the terms of the trust deed obviously is an agreement to alter the terms of the instrument . . . To hold otherwise would reduce a trust deed in any case to an unsubstantial if not worthless security." *Karlsen,* 15 Cal.App.3d 112, 121, 92 Cal.Rptr. 851 (1971) (citation omitted.) "An agreement by which a lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property comes within the statute of frauds." *Secrest v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal.App.4th 544, 457, 84 Cal.Rptr.3d 275 (2008).

Defendants are correct that terms of purported breached agreements are not sufficiently pled. To the extent plaintiffs rely on a written contract, plaintiffs must attach the written contract or plead its terms verbatim. They have failed to do so. Moreover, a purported short sale agreement requires a writing to satisfy the statute of frauds. Again, the complaint fails to pled the terms of such agreement. Such deficiencies warrant dismissal of the breach of contract claim.

**Fraudulent Property Transfer**

The complaint's (eighth) fraudulent property transfer claim alleges that "PNC sold or otherwise transferred the Property to Rushmore during the original short sale transaction" when "the Property was encumbered by a bankruptcy filing that affected the Property and stayed any transaction in regard to the Property." The claim continues: "PNC's transfer of the Property to Rushmore was void and illegal under federal bankruptcy statutes due to the bankruptcy stay, and such transfer was fraudulent."

Defendants fault the claim in that they are not debtors subject to a bankruptcy to prohibit a property transfer. Defendants explain that PNC assigned Mr. Altmann's loan and did not transfer any property to demonstrate a property transfer from a bankruptcy estate.

Defendants are correct. The complaint merely notes a fraudulent transfer without reference to a particular state or federal statute. Defendants held no title to the property. The fraudulent property transfer claim fails as a matter of law.

**Due Process Violation**

The complaint's (ninth) due process violation claim alleges that "Defendants . . . initiated non-judicial foreclosure proceedings against Altmann's home" to result in "further failure to provide plaintiffs Altmann and CBI with due process in regard to the foreclosure sale."

Defendants note that exercise of California's non-judicial foreclosure procedure does not invoke procedural due process requirements.

The complaint does not reference 42 U.S.C. § 1983, the vehicle to pursue a constitutional challenge such as the purported due process violation claim. The "ultimate issue" to determine whether a person is subject to a section 1983 action is whether "the alleged infringement of federal rights [is] 'fairly attributable to the State?'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764 (1982) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982)). The United States Supreme Court has adopted a two-part test to address whether infringement is attributable to the state:

> Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State: These cases reflect a two-part approach to this question of "fair attribution." First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. . . Second, the

1    party charged with the deprivation must be a person who may fairly be said to be a state
     actor. This may be because he is a state official, because he has acted together with or has
2    obtained significant aid from state officials, or because his conduct is otherwise
     chargeable to the State. Without a limit such as this, private parties could face
3    constitutional litigation whenever they seek to rely on some state rule governing their
     interactions with the community surrounding them.

4

5    *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744 (1982).

6         A private remedy such as non-judicial foreclosure does not involve state action to invoke a

7    section 1983 claim.  *Apao v. Bank of New York*, 324 F.3d 1091, 1095 (9th Cir. 2003); *Charmicor v.*

8    *Deaner*, 572 F.2d 694, 696 (9th Cir. 1978) (source of the non-judicial foreclosure " right is not conclusive

9    as to state action").  "California's nonjudicial foreclosure procedure does not constitute state action and

10   is therefore immune from the procedural due process requirements of the federal Constitution."

11   *Garfinkle v. Superior Court*, 21 Cal.3d 268, 281, 146 Cal.Rptr. 208 (1978).

12        Non-judicial foreclosure proceedings do not constitute state action to bar the complaint's due

13   process violation claim.

14        In addition, the complaint fails to substantiate that defendants are state actors.  "When addressing

15   whether a private party acted under color of law, we therefore start with the presumption that private

16   conduct does not constitute governmental action."  *Sutton v. Providence St. Joseph Medical Center,* 192

17   F.3d 826, 835 (9th Cir. 1999); *see Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir.1992) ("Only in rare

18   circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."); *Price v.*

19   *Hawaii*, 939 F.2d 702, 707-08 (9th Cir.1991) ("[P]rivate parties are not generally acting under color of

20   state law.")  "§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or

21   wrong." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 985 (1999) (citation and

22   internal quotation marks omitted).

23        As private actors, defendants are subject to no section 1983 claim to further warrant dismissal

24   of the complaint's due process violation claim.

25                                    **Unconscionability**

26        The complaint's (eleventh) unconscionable contract claim urges this Court to find "prodecural

27   unconscionability of this mortgage contract and deem such contract void" in that Mr. Altmann "could

28   not understand and choose the terms of the loan effectively without the meaningful disclosure of the

1   Lenders thus meeting the unequal bargaining power."

2      Section 1670.5(a) provides:

3         If the court as a matter of law finds the contract or any clause of the contract to
          have been unconscionable at the time it was made the court may refuse to enforce the
4         contract, or it may enforce the remainder of the contract without the unconscionable
          clause, or it may so limit the application of any unconscionable clause as to avoid any
5         unconscionable result.

6      "Civil Code section 1670.5 does not create an affirmative cause of action but merely codifies the

7   defense of unconscionability." *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal.App.3d 758, 766,

8   259 Cal.Rptr. 789 (1989).

9      Unconscionability has "procedural" and "substantive" elements. *A & M Produce Co. v. FMC

10  Corp.*, 135 Cal.App.3d 473, 486, 186 Cal.Rptr. 114 (1982).  The procedural element focuses on: (1)

11  "oppression," which "arises from an inequality of bargaining power which results in no real negotiation

12  and 'an absence of meaningful choice'"; and (2)  "surprise" which "involves the extent to which the

13  supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party

14  seeking to enforce the disputed terms." *A & M Produce*, 135 Cal.App.3d at 486, 186 Cal.Rptr. 114

15  (citations omitted).  The substantive element turns on "allocation of risks between the parties, and

16  therefore that a contractual term is substantively suspect if it reallocates the risks of the bargain in an

17  objectively unreasonable or unexpected manner" to constitute a "one-sided" result without "justification"

18  for it.  *A & M Produce*, 135 Cal.App.3d at 487, 186 Cal.Rptr. 114 (citations omitted).

19     The complaint alleges no facts that defendants engaged in oppression, surprise, or overly-harsh

20  conduct to suggest the availability of the unconscionability defense.  The complaint reveals no more than

21  an arms length loan transaction and Mr. Altmann's attempts to avoid foreclosure.  Defendants are not

22  subject to an unconscionability claim or defense to warrant dismissal of the claim.

23                    **California Statutory Unfair Lending Practices**

24     California has enacted anti-predatory lending statutes. *See* Cal. Fin. Code, §§ 4970-4979.8.  The

25  complaint's twelfth claim purports to allege violations of several subparts of California Financial Code

26  section 4973(c).

27     An initial question is whether Mr. Altmann's loan is a "covered loan" under subsection (b) of

28  California Financial Code section 4970 ("section 4970").  Section 4970(b) provides:

                                        24

"Covered loan" means a consumer loan in which the original principal balance of the loan does not exceed the most current conforming loan limit for a single-family first mortgage loan established by the Federal National Mortgage Association in the case of a mortgage or deed of trust, and where one of the following conditions are met:

(1) For a mortgage or deed of trust, the annual percentage rate at consummation of the transaction will exceed by more than eight percentage points the yield on Treasury securities having comparable periods of maturity on the 15th day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor.

(2) The total points and fees payable by the consumer at or before closing for a mortgage or deed of trust will exceed 6 percent of the total loan amount.

The complaint fails to allege facts that Mr. Altmann's loan meets section 4970(b) conditions. *See Nool v. HomeQ Servicing*, 653 F.Supp.2d 1047, 1054 (E.D. Cal. 2009) (dismissing a section 4970 claim for failure to allege "covered loan" conditions).   In absence of necessary facts to establish a covered loan, the complaint's twelfth claim fails.  *See Fortaleza v. PNC Financial Services Group, Inc.*, 642 F.Supp.2d 1012, 1020 (N.D. Cal. 2009) (dismissing a claim under California Financial Code, §§ 4973, et seq., in that plaintiff "failed to identify either the specific statutory provision pursuant to which plaintiff brings suit, or the specific conduct undertaken by either [defendant] in alleged violation of an applicable statutory provision").

Furthermore, the complaint's twelfth claim is untimely in that California Code of Civil Procedure section 340 provides a one-year limitations period for statutes such as California Financial Code sections 4970-4979.8. *See DeLeon v. Wells Fargo Bank, N.A.*, 729 F.Supp.2d 1119, 1128-1129 (N.D. Cal. 2010). Plaintiffs' claims arise out of Mr. Altmann's loan origination and accrued at the loan's April 2007 consummation to render the complaint's October 27, 2011 filing untimely for claims under California Financial Code sections 4970-4979.8.

### **Usury**

The complaint's (thirteenth) usury laws violation claim alleges that loan documents generated by defendants "contained an illegal and usurious rate of interest that violated California's Usury laws."

Defendants fault the complaint's failure to allege usury elements.

"The essential elements of usury are: (1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious

transaction." *Ghirardo v. Antonioli*, 8 Cal.4th 791, 798, 35 Cal.Rptr.2d 418 (1994). "There is a rebuttable presumption that a transaction is not usurious." *Ghirardo*, 8 Cal.4th at 798-99, 35 Cal.Rptr.2d 418 (1994).

The complaint is devoid of facts to suggest that Mr. Altmann's loan is usurious. The complaint lacks facts as to the loan's interest rate, its exceeding the statutory maximum, and the lender's willful intent.

Moreover, a usury claim is susceptible to the three-year limitations period of California Code of Civil Procedure section 338(a), which address an "action upon liability created by statute." California's usury proscription is found in California Constitution, article XV, section 1, which states "No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action."

The limitations defense provides further grounds to dismiss the usury claim.

## Truth In Lending Act

The complaint's fourteenth claim purports to allege violations under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., and its implementing Regulation Z, 12 C.F.R. §§ 226, et seq. The claim alleges that "material documents provided to Altmann . . . failed in one or more material respects to disclose to Altmann in a form and manner required by applicable statute and regulation."

Defendants challenge the complaint's TILA claims as time barred.

### *Damages Limitations Period*

A TILA damages claim is subject to 15 U.S.C. § 1640(e), which provides that an action for a TILA violation must proceed "within one year from the date of the occurrence of the violation." "TILA requires that any claim based on an alleged failure to make material disclosures be brought within one year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d 1176, 1183 (D. Or. 2005). The limitations period runs from the date of a transaction's consummation which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008). The Ninth Circuit noted in *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

1
2
3    The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed.  The [plaintiffs] were in full possession of all information relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day the loan papers were signed.

4    The complaint's face illustrates that TILA damages claims are time barred in that Mr. Altmann

5    consummated his loan in April 2007 and filed his complaint on October 27, 2011, more than four years

6    after their loan transaction.  TILA damages claims are doomed.

7    ***Rescission Limitations Period***

8    To the extent that the FAC pursues a TILA rescission claim, it too is time barred.

9    TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without

10   penalty, a consumer loan that uses their principal dwelling as security. *Semar v. Platte Valley Federal*

11   *Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986);15 U.S.C. § 1635(a).  TILA rescission may be

12   extended up to three years if the lender fails to comply with TILA disclosure requirements.  *Semar*, 791

13   F.2d at 701-702; 15 U.S.C. § 1635(f).

14   15 U.S.C. § 1635(f) addresses the outer most limit to seek rescission:

15
16
17   An obligor's right of rescission **shall expire three years after the date of consummation of the transaction** or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . (Bold added.)

18   The U.S. Supreme Court has described as "manifest" Congress' intent to prohibit rescission after

19   the three-year period has run:

20
21
22
23
24
25
26   Section 1635(f), however, takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well. The subsection says nothing in terms of bringing an action but instead provides that the "right of rescission [under the Act] shall expire" at the end of the time period. It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous. There is no reason, then, even to resort to the canons of construction that we use to resolve doubtful cases, such as the rule that the creation of a right in the same statute that provides a limitation is some evidence that the right was meant to be limited, not just the remedy. *See Midstate Horticultural Co., supra*, at 360, 64 S.Ct., at 130; *Burnett, supra*, at 427, n. 2, 85 S.Ct., at 1054 n. 2; *Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692, 693-694, 48 L.Ed. 1067 (1904).

27   *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 419, 118 S.Ct. 1408 (1998); *Miguel v. Country Funding*

28   *Corp.,* 309 F.3d 1161, 1164 (9th Cir. 2002) ("§ 1635(f) is a statute of repose, depriving the courts of

1    subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period").

2         With Mr. Altmann's loan consummated in April 2007, a TILA rescission remedy expired prior

3    to the October 27, 2011 filing of Mr. Altmann's complaint.  TILA rescission is time barred.

4                                    ***Equitable Tolling***

5         The complaint's TILA claim alleges that "the doctrine of equitable tolling applies to Altmann's

6    claims for civil damages and rescission."  Defendants challenge application of equitable tolling to save

7    TILA claims from expired limitations periods.

8         "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital

9    information bearing on the existence of his claim."  *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178

10   (9th Cir. 2000).  The Ninth Circuit has explained:

11        Unlike equitable estoppel, equitable tolling does not depend on any wrongful conduct by
          the defendant to prevent the plaintiff from suing.  Instead it focuses on whether there was
12        excusable delay by the plaintiff.  If a reasonable plaintiff would not have known of the
          existence of a possible claim within the limitations period, then equitable tolling will
13        serve to extend the statute of limitations for filing until the plaintiff can gather what
          information he needs. . . . However, equitable tolling does not postpone the statute of
14        limitations until the existence of a claim is a virtual certainty.

15   *Santa Maria*, 202 F.3d at 1178 (citation omitted).

16        Courts are reluctant to invoke equitable tolling:

17             A statute of limitations is subject to the doctrine of equitable tolling; therefore,
          relief from strict construction of a statute of limitations is readily available in **extreme**
18        **cases** and gives the court latitude in a case-by-case analysis. . . . The equitable tolling
          doctrine has been applied by the Supreme Court in certain circumstances, but it has been
19        applied sparingly; for example, the Supreme Court has allowed equitable tolling when
          the statute of limitations was not complied with because of defective pleadings, when a
20        claimant was tricked by an adversary into letting a deadline expire . . . Courts have been
          generally unforgiving, however, when a late filing is due to claimant's failure "to exercise
21        due diligence in preserving his legal rights." . . .

22   *Scholar v. Pac. Bell*, 963 F.2d 264, 267-268 (9th Cir. 1992) (bold added; citations omitted).

23        To rely on delayed discovery of a claim, "[a] plaintiff whose complaint shows on its face that his

24   claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1)

25   the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable

26   diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808, 27 Cal.Rptr.3d 661 (2005) (quoting

27   *McKelvey v. Boeing North American, Inc.,* 74 Cal.App.4th 151, 160, 86 Cal.Rptr.2d 645 (1999)).  "[T]o

28   adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite

diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Fox*, 35 Cal.4th at 809, 27 Cal.Rptr.2d 661.

The doctrine of delayed discovery requires a plaintiff to plead facts showing an excuse for late discovery of the facts underlying his cause of action. *Prudential Home Mortgage Co. v. Superior Court*, 66 Cal.App.4th 1236, 1247, 78 Cal.Rptr.2d 566 (1998). The plaintiff must show that it was not at fault for failing to discover or had no actual or presumptive knowledge of facts sufficient to put it on inquiry. *Prudential Home*, 66 Cal.App.4th at 1247, 78 Cal.Rptr.2d 566. As to sufficiency of delayed discovery allegations, a plaintiff bears the burden to "show diligence" and "conclusory allegations" will not withstand dismissal. *Fox*, 35 Cal.4th 797, 808, 27 Cal.Rptr.2d 661.

The complaint lacks necessary allegations for equitable tolling. The complaint references vague TILA discrepancies and makes sweeping references to failure to provide documents and hidden facts. The complaint lacks allegations that defendants prevented plaintiffs to compare what documents they received to the TILA disclosure requirements. *See Hubbard v. Fidelity Federal Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (no evidence suggested that lender concealed its alleged breach). Nothing suggests that plaintiffs lacked information relevant to discovery of a TILA violation when Mr. Altmann's loan was consummated. The complaint offers nothing to demonstrate that despite plaintiffs' due diligence, they were unable to obtain information of a TILA violation. The complaint is silent as to plaintiffs' purported due diligence. Moreover, the limitations period for TILA rescission is a statute of repose not subject to equitable tolling. TILA claims are time barred and subject to dismissal.

**Punitive Damages**

The complaint includes a prayer for punitive damages and references to attempt to subject defendants to punitive damages.

Defendants contend that the complaint lacks adequate allegations to subject them to punitive damages.

California Civil Code section 3294 ("section 3294") provides that in an action "for breach of an obligation not arising from contract," a plaintiff may seek punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ.

Code, § 3294(a).  Section 3294(c)(1)–(3) defines:

1. "Malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights and safety of others";

2. "Oppression" as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights"; and

3. "Fraud" as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

"Although the court will apply the substantive law embodied in section 3294, 'determinations regarding the adequacy of pleadings are governed by the Federal Rules of Civil Procedure.'" *Jackson v. East Bay Hosp.*, 980 F.Supp. 1341, 1353 (N.D. Cal. 1997).

Punitive damages are "available to a party who can plead and prove the facts and circumstances set forth in Civil Code section 3294." *Hilliard v. A.H. Robbins Co.*, 148 Cal.App.3d 374, 392, 196 Cal.Rptr. 117 (1983).  "To support punitive damages, the complaint . . . must allege ultimate facts of the defendant's oppression, fraud, or malice." *Cyrus v. Haveson*, 65 Cal.App.3d 306, 316-317, 135 Cal.Rptr. 246 (1976).  Pleading the language in section 3294 "is not objectionable when sufficient facts are alleged to support the allegation." *Perkins v. Superior Court*, 117 Cal.App.3d 1, 6-7, 172 Cal.Rptr. 427 (1981).

In *G.D. Searle & Co. v. Superior Court*, 49 Cal.App.3d 22, 29, 122 Cal.Rptr. 218 (1975), the California Court of Appeal explained punitive damages pleading:

> When the plaintiff alleges an intentional wrong, a prayer for exemplary damage may be supported by pleading that the wrong was committed willfully or with a design to injure. . . . When nondeliberate injury is charged, allegations that the defendant's conduct was wrongful, willful, wanton, reckless or unlawful do not support a claim for exemplary damages; such allegations do not charge malice. . . . When a defendant must produce evidence in defense of an exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him.  (Citations omitted.)

"Allegations that the acts . . . were 'arbitrary, capricious, fraudulent, wrongful and unlawful,' like other adjectival descriptions of such proceedings, constitute mere conclusions of law . . ." *Faulkner v. California Toll Bridge Authority*, 40 Cal.2d 317, 329, 253 P.2d 659 (1953); *see Letho v. Underground Construction Co.*, 69 Cal.App.3d 933, 944, 138 Cal.Rptr. 419 (1997) (facts and circumstances of fraud

should be set out clearly, concisely, and with sufficient particularity to support punitive damages); *Smith v. Superior Court*, 10 Cal.App.4th 1033, 1042, 13 Cal.Rptr.2d 133 (1992) (punitive damages claim is insufficient in that it is "devoid of any factual assertions supporting a conclusion petitioners acted with oppression, fraud or malice."); *Brousseau v. Jarrett*, 73 Cal.App.3d 864, 872, 141 Cal.Rptr. 200 (1977) ("conclusory characterization of defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of 'oppression, fraud, or malice, express or implied,' within the meaning of section 3294").

Punitive damages are never awarded as a matter of right, are disfavored by the law, and should be granted with the greatest of caution and only in the clearest of cases. *Henderson v. Security Pacific National Bank*, 72 Cal.App.3d 764, 771, 140 Cal.Rptr. 388 (1977).

Defendants are correct that the complaint lacks facts that defendants acted with requisite malice, oppression or fraud to support punitive damages claims. The complaint merely make stray references to "malice, fraud, and/or oppression" and "malicious" actions with no facts to support such conclusions. The complaint lacks sufficient allegations of defendants' wrongdoing to impose punitive damages on defendants. Moreover, dismissal of plaintiffs' claims warrants dismissal of punitive damages claims.

**Attorney Fees**

Defendants contend that the complaint lacks necessary allegations to justify an award of attorney fees to plaintiffs. Defendants explain that in absence of a statute or contractual provision for attorney fees recovery, attorney fees are not recoverable as damages in an ordinary civil action.

Attorney fees are recoverable if authorized by statute or contract. *See* Cal. Code Civ. Proc., § 1021. In a federal action, state law is relevant to assess "whether the contractual attorney's fee obligation was valid and enforceable." *Matter of Sheridan*, 105 F.3d 1164, 1167 (7th Cir. 1997). "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). California Code of Civil Procedure section 1033.5(a)(1) permits recovery of attorney fees "when authorized by . . . Contract." Under California Code of Civil Procedure section 1021, the "measure and mode" of attorney fees "is left to . . . agreement," unless attorney fees "are specifically provided for by statute."

California Code of Civil Procedure section 1021 "is a codification of the general rule, also known

1  as the American Rule, that attorney fees, are not taxable as costs against the losing party. *Young v.*

2  *Redman*, 55 Cal.App.3d 827, 834-835, 128 Cal.Rptr. 86 (1976). "The rule here has long been that

3  attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing

4  therefor." *Fleischmann Corp. v. Maier Brewing,* 386 U.S. 714, 717-718, 87 S.Ct. 1404 (1967).

5  "[U]nless there are pleading and proof of an express contractual provision therefor, attorneys' fees cannot

6  be awarded a successful litigant." *Robinson & Wilson, Inc. v. Stone*, 35 Cal.App.3d 396, 413, 110

7  Cal.Rptr. 675 (1973).

8      The complaint alleges neither breach of a written agreement with an attorney fees provision nor

9  a statute entitling plaintiffs to an award of attorney fees.  In the absence of a statutory or contractual basis

10  for attorney fees, the complaint lacks sufficient allegations for an attorney fees award to plaintiffs.

11                          **Attempt At Amendment And Malice**

12      As discussed above, the complaint's global claims are barred legally, and plaintiffs are unable

13  to cure the complaint's claims by allegation of other facts and thus are not granted an attempt to amend.

14  Moreover, this Court surmises that plaintiffs brought this action in absence of good faith and seek to

15  exploit the court system to delay or to vex defendants.  The test for maliciousness is a subjective one and

16  requires the court to "determine the . . . good faith of the applicant." *Kinney v. Plymouth Rock Squab*

17  *Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick*

18  *v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating

19  "clear pattern of abuse of judicial process").  A lack of good faith or malice also can be inferred from

20  a complaint containing untrue material allegations of fact or false statements made with intent to deceive

21  the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984).  An attempt to vex or delay provides

22  further grounds to dismiss this action.

23                          **CONCLUSION AND ORDER**

24      For the reasons discussed above, this Court:

25      1.      DISMISSES with prejudice this action against defendants;

26      2.      DIRECTS the clerk to enter judgment in favor of defendants PNC Bank, N.A., and

27              Rushmore Loan Management Services and against plaintiffs Ernie Altmann and Creative

28              Builders, Inc. in that there is no just reason to delay to enter such judgment given that the

1    plaintiffs' claims against these defendants and their alleged liability are clear and distinct

2    from claims against and liability of other defendants.  *See* F.R.Civ.P. 54(b); and

3    3.    ORDERS plaintiffs, no later than January 26, 2012, to file papers to show cause why this

4    Court should not dismiss this action against any remaining defendants, including Cal-

5    Western Reconveyance Corporation and The Bowers Group.

6    **This Court ADMONISHES plaintiffs that this Court will dismiss this action against any**

7    **remaining defendants if the plaintiffs fail to comply with this order and fail to file timely papers**

8    **to show cause why this Court should not dismiss this action against any remaining defendants.**

9    IT IS SO ORDERED.

10   **Dated:    January 19, 2012**                        /s/ Lawrence J. O'Neill
                                                UNITED STATES DISTRICT JUDGE

33